582 So.2d 198 (1991)
HARTMAN ENTERPRISES, INC.
v.
ASCENSION-ST. JAMES AIRPORT AND TRANSPORTATION AUTHORITY, et al.
No. CA 90 2174.
Court of Appeal of Louisiana, First Circuit.
February 22, 1991.
Rehearing Denied May 2, 1991.
Writ Denied June 28, 1991.
*199 Jess J. Waguespack, Napoleonville, for plaintiff.
Victor L. Marcello, Donaldsonville, for defendant Ascension-St. James Airport Auth.
Russell W. Wray, Baton Rouge, for defendant M. Matt Durand.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
GONZALES, Judge.
In June, 1990, the Ascension-St. James Airport and Transportation Authority ("Authority") advertised and solicited for competitive bids pursuant to Louisiana Public Bid Law for the first phase of construction of the Ascension-St. James Airport. The bid solicitation required that each bidder submit a base bid for the work on the runway, plus bids for four additional alternatives for segments of work to be performed on the taxiway, apron, box culvert and fencing. The specifications required that bidders submit bid security in an amount equal to five percent of the total bid amount, which included the base bid and all four alternatives.
Ten prospective contractors submitted sealed bids. Of the ten, the low bidder on the base project was M. Matt Durand, Inc. The low bidder on the base bid plus alternative one was Hartman Enterprises, Inc.
When the bids were opened, it was noted that Hartman Enterprises's bid was irregular because the bid bond was in the amount of "five percent of total amount bid/not to exceed $75,000.00 dollars." The bond did not equal five percent of the total bid for the base project plus all four alternatives.
The engineering consultant, Berger, Barnard and Thomas, Inc., recommended that the contract be awarded to Hartman Enterprises, Inc., for the base bid plus the first alternative subject to FAA approval and the availability of sufficient grant funds.
Subsequent to that decision, counsel for the Authority requested a written opinion from the Office of the Attorney General on the bid selection. The opinion submitted concluded Hartman's bid could be rejected and stated the Authority could award the *200 contract to the next lowest bidder or cancel the solicitation and seek new bids.
The Authority then met on August 22, 1990, and decided to award the contract on the base bid only, leaving the four alternatives for a later time. Because M. Matt Durand was the low bidder on the base bid, the Authority passed a resolution to accept M. Matt Durand's bid. Hartman and his counsel were present at the meeting on August 22, 1990, and presented a letter protesting the award of the contract to Durand.
On August 24, 1990, the engineering firm issued to Durand a formal notice of contract award. On August 30, 1990, a written contract was signed by Durand and the Authority. The engineering firm issued Durand a notice to proceed with the work on September 4, 1990, and Durand began work on the project.
On September 23, 1990, Mr. Hartman made an aerial inspection of the work site and observed the work in progress. Mr. Hartman testified at trial that only a small percentage of the work had been done on September 23, 1990, and yet he waited until October 9, 1990, to file a petition for an injunction to halt progress on the job. He never attempted to obtain a Temporary Restraining Order to halt the work in progress until a hearing could be held, although he testified that he knew this was a short-term contract.
After the petition was filed by Hartman on October 9, 1990, seeking a mandamus, injunction and damages, the hearing was not held until one month later on November 5, 1990.
The hearing was continued on November 7, 1990, and at that time Larry LeBlanc, Vice-President of Berger, Barnard and Thomas, testified that the project was over 90 percent complete, with only some finish up work left.
On November 21, 1990, the trial court issued an order granting a preliminary injunction and mandamus. The order further overruled the dilatory and peremptory exceptions raising the objections of prescription, no cause of action, improper cumulation and vagueness filed by the Authority. The defendant Authority filed an application for writ of certiorari to this Court and defendant Durand did likewise. These writs were denied.
On November 26, 1990, upon joint motion of the Authority and Durand, an appeal was taken. On November 27, 1990, upon motion of Hartman Enterprises, an appeal was taken from the trial court judgment only insofar as it failed to grant plaintiff the writ of mandamus ordering the Authority to restore the award of the base and additive alternate one to Hartman.
When writs were denied by this Court, a joint application for peremptory writs of certiorari were filed by the Authority and Durand.
On December 20, 1990, the Louisiana Supreme Court issued an order which set aside the request for injunctive relief, reversing the preliminary injunction which had restrained the Authority and Durand from any further work on the project, and reversing the mandatory injunction which had required Durand, Inc. to return to the Authority payment received for work done in excess of actual direct costs. The application was otherwise denied, and this Court was ordered to expedite the pending appeal.
The sole remaining issue to be decided is whether plaintiff has a cause of action for damages. However, although ostensibly we are considering only the peremptory exception raising the objection of no cause of action, because the parties asked us to consider all the evidence, we are in essence deciding the merits of the case.
In the recent case of Airline Construction Co., Inc. v. Ascension Parish School Board, 568 So.2d 1029, 1033 (La.1990), the court found that:
[A]n unsuccessful bidder on a public contract who fails to resort to the relief granted by statute by attempting to enjoin timely the execution or the performance of the contract, when the facts necessary for injunctive relief are known or readily ascertainable by the bidder, is precluded from recovering damages *201 against the public body. (Emphasis Added)
Under the Airline decision, timeliness of suit for injunctive relief depends upon the facts and circumstances of each case,
[I]ncluding, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the sucessful bidder, and the time period between the awarding of the illegal contract and the completion of construction.
Following the test in Airline, 568 So.2d at 1035, the whole record shows that Hartman had "readily ascertainable" to him sufficient facts to bring a timely request for injunctive relief and the record further reveals that under the facts of this case he did not bring an action for injunctive relief timely, and therefore under Airline he is precluded from recovering damages against the public body.
We recognize that at the time the suit was instituted on October 9, 1990, the job was not substantially complete; however, plaintiff sought no Temporary Restraining Order, nor did he apparently insist upon a hearing on the injunction within ten days. Having failed to insist upon the rights available to him, they must be considered to have been waived.
In the Airline opinion, the Louisiana Supreme Court likened the waiver concept to the contemporaneous objection rule. However, conceptually, it seems more likened to prescription or laches.[1] We note that Airline also recommends legislation be utilized to create both a prescriptive period and a speedy appeal process.
Under Airline, plaintiff has not met the conditions necessary to maintain a cause of action for damages and therefore the trial court erred in overruling the peremptory exception raising the objection of no cause of action. Because this Court concludes the plaintiff has no cause of action, it is not necessary for this Court to address the peremptory exception raising the objection of no right of action or any other issue raised in this case.
For the foregoing reasons, the judgment of the trial court overruling the peremptory exception raising the objection of no cause of action is reversed and judgment is rendered herein in favor of the Authority and Durand and against Hartman sustaining the peremptory exception raising the objection of no cause of action *202 and dismissing Hartman's petition with prejudice.[2] Hartman is cast for all costs.
REVERSED AND RENDERED.

ON APPLICATION FOR REHEARING
Rehearing denied.
GONZALES, Judge, assigns reasons for the denial of the rehearing.
I agree with the plaintiff that La.R.S. 38:2220(B) as amended was in effect at the time the bid was awarded and the contract entered into. I further agree that La.R.S. 38:2220(B) as amended gives a right of action to bring an ordinary proceeding. However, I believe that if plaintiff has an ordinary cause of action, it is one to "nullify a contract entered into in violation of this Part." I don't interpret this as a cause of action for damages. The word damages does not appear in the new law, does not appear in the old law and only appears in Justice Lemmon's opinion in Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029 (La. 1990). If there were an action for damages, it would appear to have to follow the criteria set forth in Airline, 568 So.2d 1029. Hartman has not complied, and at this point in time, cannot comply with the criteria, because it is too late to state a cause of action.
Query: Who would be the beneficiary of a cause of action in damages to nullify the contract? Perhaps the Legislature intended for the public body to get its money back. But if the public body violated the Public Bid Law, why should they benefit therefrom?
LANIER, Judge, dissenting from the denial of the rehearing.
Prior to July 25, 1990, La.R.S. 38:2220(B) provided as follows:
The district attorney in whose district a violation of this Part occurs, the attorney general or any interested party possesses a right of action to bring suit for appropriate injunctive relief in the district court to nullify a contract entered into in violation of this Part.
(Emphasis added)
This statute did not provide for an ordinary action in a suit to nullify a public contract for violation of the Louisiana Public Bid Law. In Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029 (La.1990), the operative facts occurred in 1986 and 1987 and the court interpreted La.R.S. 38:2220(B) as it existed at that time. Airline, 568 So.2d at 1031. Since La.R.S. 38:2220(B) only provided for injunctive relief at that time, the court in Airline, 568 So.2d at 1035 observed as follows:
We hold that an unsuccessful bidder on a public contract who wishes to obtain relief because of the rejection of its bid must seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the bidder and when corrective action as a practical matter can be taken by the public body.... If an aggrieved bidder does not timely file a suit for injunction, he has waived any right he may have to claim damages *203 against the public body or the successful bidder.
In its application for a rehearing, Hartman has brought to our attention the fact that La.R.S. 38:2220(B) was amended by Act 869 of 1990, effective July 25, 1990, to provide as follows:
The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.
We did not discuss the effect of this amendment in our original opinion. This amendment is applicable to the instant case because the public contract herein was not awarded until August 22, 1990, which is after the effective date of Act 869. The amendment changed the prior law. Now an "ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of" the Louisiana Public Bid Law is authorized. The essence of our original holding herein was that failure to diligently pursue the injunction action constituted a waiver of the cause of action for damages. Query: Does failure to diligently pursue the injunction action waive a claim for damages in the ordinary proceeding now authorized by La.R.S. 38:2220(B)?
I would grant the rehearing to address this issue.
NOTES
[1] Although not well developed in Louisiana jurisprudence, the concept of laches is recognized in the official comments to La.C.C.P. art. 1005 as an affirmative defense.

In Stansbury v. City of Opelousas, 341 So.2d 33, 35 (La.App. 3d Cir.1976), writ refused, 343 So.2d 197 (La.1977), the court held that laches barred a police officer's claim for reinstatement and back pay, stating:
It is our jurisprudence that the doctrine of laches is based upon the sound public policy that a claimant should pursue his action for relief with all diligence and speed so that funds normally paid to claimant may not be diverted to an equally valid and lawful public purpose thereby upsetting the orderly fiscal processes of government. See Devillier v. City of Opelousas, 247 So.2d 412 (La.App. 3 Cir. 1971) and cases cited therein. The jurisprudence is also to the effect that laches is an equitable doctrine the application of which rests in the sound discretion of the trial court. Molero v. Bass, 322 So.2d 452 (La.App. 4 Cir. 1975).
The doctrine of laches has been applied to preclude recovery of damages in other Louisiana cases, Albritton v. Union Parish School Board, 307 So.2d 676 (La.App. 2nd Cir. 1975); Arrington v. Grant Parish School Board, 130 So.2d 443 (La.App. 3d Cir.1961); State ex rel Schwehm v. Morrison, 78 So.2d 192 (La.App.Orl. Cir.1955). For recognition of the laches doctrine, see also Corbello v. Sutton, 442 So.2d 610 (La.App. 1st Cir.1983).
We are aware of Justice Dixon's disagreement with concept of laches in his concurrence in Osborne v. Stone, 472 So.2d 223 (La.App. 1st Cir.), vacated and remanded, 476 So.2d 809 (La. 1985), appeal after remand, 536 So.2d 473, (La. App. 1st Cir.1988), writ denied, 537 So.2d 1164 (La.1989); we are also aware of La.C.C. art. 3457 which provides that "[T]here is no prescription other than that established by legislation." Revision comment (b) for La.C.C. art. 3457 provides that "[U]nder the Louisiana legal system, there is no room for the common law doctrine of laches." However, the Louisiana Supreme Court apparently has created a new "limitation on ... time for filing" in Airline.
We are extending the language of Airline, by requiring not only timely filing, but also diligent legal action.
[2] Waiver, laches and extinguishment of an obligation are affirmative defenses, and as such, they are defenses to the merits and not objections which are raised in exceptions. La.C.C.P. arts. 921, 923 and 1005 and their Official Revision Comments. Generally, evidence may not be considered to support or controvert the objection that the petition fails to state a cause of action. La.C.C.P. art. 931. However, in the instant case, evidence was taken at a hearing on the consolidated issues of the exceptions, the preliminary injunction and the mandamus. During oral argument in this court, the parties advised that the evidence taken was intended to apply to all issues, including the objection of no cause of a action. Since there was not objection to the admission of evidence at the hearing on the objection of no cause of action, that evidence may properly be considered by the trial court and this court. Rheuark v. Terminal Mud & Chemical Co., 213 La. 732, 35 So.2d 592 (1948); Jordan v. Sweeney, 467 So.2d 569 (La. App. 1st Cir.), writ denied, 469 So.2d 985 (La. 1985). The evidence shows that Hartman waived its claim by failing to take diligent legal action, and thus, has no cause of action per Airline.